UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIO C. RANDAZZO, | ) Case No. ED CV-15-443-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND<br>) ORDER |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration, | ) |
| Defendant. | ) |

# I.

# **INTRODUCTION**

On March 9, 2015, plaintiff Fabio C. Randazzo filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB:"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") erred at step five of the sequential evaluation process by failing to identify and explain inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Amended Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 7-11; Memorandum in Support of Defendant's Answer ("D. Mem.") at 4-8.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred at step five but the error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was thirty-nine years old on September 12, 2009, the alleged onset date of disability. AR at 71. He has a high school education and past relevant work as a telephone solicitor. *Id*. at 60-61, 215.

On October 27, 2010, petitioner filed an application for a period of disability and DIB, alleging an onset date of September 12, 2009 due to panic attacks and type 2 diabetes. *Id*. at 189-90, 215. On December 9, 2010, petitioner also filed an application for SSI. *Id*. at 191-95. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 95-107.

On July 15, 2013, plaintiff, represented by counsel, appeared and testified before the ALJ. *Id*. at 39-68. Alan Ey, a vocational expert ("VE"), also provided testimony. *Id*. at 57-66. On July 24, 2013, the ALJ denied plaintiff's claims for benefits. *Id*. at 23-33.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since September 12, 2009, the alleged onset of disability. *Id.* at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"); depression; anxiety; diabetes mellitus; severe arthritis change in the right knee with small supra-patellar effusion; miniscus tear bilaterally; obesity; and herniated disc of the lumbar spine with sciatica to the right leg. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 26.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to perform a range of light work, with the limitations that plaintiff: could lift twenty pounds occasionally and ten pounds frequently; could stand and/or walk two hours out of an eight-hour workday, with the ability to use a cane when ambulating outside of the work area; could sit six hours out of an eight-hour work day but must have the ability to stand and stretch every hour, estimated to take one to three minutes per hour; could occasionally bend, stoop, and crouch; could not crawl or kneel; could not work at highly fast-paced work, such as rapid assembly line work; could not do work that required public contact; and could perform low stress jobs which was defined as jobs having occasional decision making or occasional changes in the work setting. *Id.* at 27.

The ALJ found, at step four, that plaintiff was unable to perform his past

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

relevant work as a telephone solicitor. *Id.* at 31.

At step five, the ALJ determined that given plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including small products assembler and electrical accessories assembler. *Id*. at 32. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 32-33.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends that the ALJ erred at step five because he improperly relied on the testimony of the VE, who identified jobs that exceeded plaintiff's RFC.[2] P. Mem. at 7-11. Specifically, plaintiff alleges that the ALJ erred because she failed to ask the VE to provide a reasonable explanation for the multiple facial inconsistencies between his testimony and the DOT. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work

---

[2] Although plaintiff purportedly agrees with the ALJ's RFC assessment and only raises an error at step five, he states that the "ALJ owed the record an explanation how an individual limited to only standing and walking for two hours in a day could sustain light work," thus implicitly arguing that the ALJ erred in finding that plaintiff had the RFC to perform light work because he could only stand/walk two hours in a day. P. Mem. at 10. Plaintiff's argument has no merit because light work may involve a "good deal of walking or standing" or "sitting most of the time." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[3] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, in response to a hypothetical person with the same RFC as plaintiff, the VE testified that such person could perform the jobs of an assembler of small products (DOT 706.684-022) and assembler of electrical accessories (DOT

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

729.687-010). AR at 61-62. The VE further testified that there would be other jobs that petitioner could perform, but did not specify them. *Id*. at 62. Although the ALJ did not expressly ask the VE whether his testimony conflicted with the DOT, at the onset of the VE's testimony, the ALJ asked the VE to testify according to the DOT or explain why he was not testifying according to it. *Id*. at 60. Thus, the ALJ fulfilled her initial obligation to inquire whether the VE's testimony conflicted with the DOT.

The ALJ's obligations, however, did not end with the initial inquiry. Even where a VE wrongly testifies that there is no conflict, where "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict [and] the ALJ provided no explanation for the deviation," the ALJ "therefore committed legal error warranting remand."). Thus, the question is whether the VE incorrectly testified that there were no conflicts and the ALJ improperly relied on the VE's testimony in the face of evidence of an apparent conflict.

A. <u>The ALJ Erred in Determining Plaintiff Could Work as an Assembler of Small Products</u>

Plaintiff argues that, despite the VE's testimony, there was a facial inconsistency between the VE's testimony and the DOT regarding the job of

assembler of small products, and the ALJ failed to obtain a reasonable explanation for the conflict. P. Mem. at 8. Specifically, plaintiff contends the DOT description of the job as assembly line work is inconsistent with his RFC.

In determining plaintiff's RFC, the ALJ found plaintiff precluded from highly fast-paced work such as rapid assembly line work, and so stated in her hypothetical to the VE. AR at 27, 61. The VE testified plaintiff could perform the job of assembler of small products. *Id*. at 62. The DOT describes the job as involving the performance of "repetitive tasks on assembly line to mass produce small products," including "[f]requently work[ing] at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT 706.684-022.

On its face, there is an apparent conflict between the VE's testimony and the DOT. The VE testified the job could be performed by someone like plaintiff who is precluded from rapid assembly line work. The job is described as "assembly line" work. It is possible that the job of assembler of small products does not involve *rapid* assembly line work, but that is not clear from the job description. Because the nature of the job of assembler of small products appears, on its face, to conflict with the VE's testimony, the ALJ had a duty to obtain a reasonable explanation for the apparent conflict, and she did not do so here. Therefore, the ALJ erred when she failed to obtain a reasonable explanation for the apparent conflict.

**B.**     **The ALJ Did Not Err in Determining Plaintiff Could Work as an Assembler of Electrical Accessories**

Plaintiff argues the VE's testimony that he could perform the job of assembler of electrical accessories also was in conflict with the DOT.[4] P. Mem. at

---

[4] Although the job of assembler of electrical accessories involves assembly work just like the job of assembler of small products, plaintiff does not argue his

8

9-11. Specifically, plaintiff contends the duties of the job were inconsistent with the ALJ's limitation of him to low stress jobs and to standing or walking no more than two hours a day.

First, in stating plaintiff's RFC, the ALJ limited plaintiff to "low stress jobs which is defined as jobs having *occasional* decision making or *occasional* changes in the work setting." AR at 27; *see id.* at 61. The DOT describes the job of electrical accessories assembler as follows:

> Assembles mechanical parts of electrical equipment, such as light sockets, switches, terminal boards, and plugging devices: Fits together parts, such as socket bases, shafts, contact fingers, and springs, in specified sequence, using fixtures, screwdrivers, and air nut runners. Tests actions of moving parts and listens for unusual sounds to detect defective parts or faulty operation. Verifies completed assembly against pictorial drawings. May be designated according to type of equipment assembled as Circuit Breaker Assembler []; Contact-Finger Assembler []; Plug Assembler []; Pull-Socket Assembler []; Push-Button-Switch Assembler []; Terminal-Block Assembler []; Tumbler-Switch Assembler [].

DOT 729.687-010. Plaintiff argues that because the DOT description requires a variety of duties during the day, it is inconsistent with plaintiff's RFC. P. Mem. at 9-10.

---

preclusion from rapid assembly line work also precludes him from the job of electrical accessories assembler. Because plaintiff does not raise this argument, it is waived. *See Greger v. Barhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised before the District Court are generally waived). Moreover, this argument would not be persuasive as to the electrical accessories assembler job, since unlike the small products assembler job, the DOT's description of the position of assembler of electrical accessories does not include "assembly line" work. *See* DOT 729.687-010.

9

1        Plaintiff appears to be arguing that the job of assembler of electrical
2   accessories must include every duty listed.  But the DOT "is not comprehensive"
3   and "provides only occupational information 'on jobs as they have been found to
4   occur.'"  *Johnson*, 60 F.3d at 1435 (citing DOT at xiii).  In other words, "[a] DOT
5   description lists duties that may be required of a [job] but this does not mean that
6   every listed duty is mandatory to the position."  *Fields v. Astrue*, 2010 WL
7   3895534, at *5 (C.D. Cal. Oct. 4, 2010).  And in this case, the job description
8   makes clear it is giving example of things that may be assembled "such as" light
9   sockets or switches, and that, depending on the type of equipment assembled, the
10  job may have a different title.  *See* DOT 729.687-010.  While some jobs may
11  require fitting together parts, testing actions of moving parts, and verifying
12  completed assembly, others may only require the fitting together of parts.  Thus,
13  nothing in the DOT description suggests an electrical accessories assembler would
14  need to perform all the duties listed so as to conflict with plaintiff's limitation to
15  only occasional changes in the work setting.
16       Second, the ALJ found plaintiff could perform a range of light work, but
17  limited to standing and/or walking for two hours out of an eight-hour day, with the
18  ability to use a cane when ambulating outside the work area.  AR at 27, 61.
19  Plaintiff argues that since the DOT defines the job of electrical accessories
20  assembler as light work (*see* DOT 729.687-010), the VE was required to explain
21  how plaintiff could perform the job given his additional standing and walking
22  limitations.  P. Mem. at 10.  But the VE did effectively explain this deviation.  In
23  particular, he testified that his determination there are 10,000 such jobs available
24  in the national economy was an "eroded" number to account for plaintiff's reduced
25  ability to stand and walk, and that the erosion was based on the VE's own
26  experience, not the DOT.  AR at 62.  As such, the VE made clear that even with
27  the additional standing and walking limitations, plaintiff could still perform the
28

position as it exists 10,000 times in the national economy.

Accordingly, the VE's testimony that plaintiff could perform the job of electrical accessories assembler did not conflict with the DOT or with plaintiff's RFC, except as explained by the VE.

**C.     The ALJ's Step Five Error Was Harmless**

Given the ALJ erred in determining plaintiff could work as a small products assembler, the question is whether that error was harmless. Plaintiff argues this error was not harmless because, once the job of assembler of small products is removed, the remaining identified job of assembler of electrical accessories does not exist in significant numbers in the national economy.[5] P. Mem. at 9.

As discussion, after accounting for erosion due to plaintiff's standing and walking limitations, the VE testified that there were 10,000 assembler of electrical accessories jobs in the national economy plaintiff could perform.[6] *Id.* Plaintiff argues this number did not meet the statutory standard. P. Mem. at 9. Notwithstanding the fact that the Ninth Circuit has found the question of whether 25,000 national jobs is significant "presents a close call," it has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Gutierrez v. Comm'r*, 740 F.3d 519, 528-29 (9th Cir. 2014). Indeed, it recognized that at least one Circuit Court determined that 10,000 jobs nationally was significant. *Id.* at 529. As such, this court does not find 10,000 jobs in the national economy is an insignificant number so as to render harmful the ALJ's error with respect to the small products assembler position.

---

[5]  In his Reply, plaintiff also argues the social security regulations require the ALJ to identify three occupations an applicant can perform. *See* Reply at 4. But the regulation cited, POMS DI 25025.030 ¶ B, refers to a step five determination using a grid rule as a framework.

[6]  The VE also testified that there were other jobs plaintiff could perform but did not identify them or provide numbers. *See* AR at 62.

11

In sum, the ALJ erred when she failed to further inquire about a facial inconsistency between the VE's testimony and the DOT with respect to the job of assembler of small products, but this error was harmless. Even if plaintiff could not perform the job of assembler of small products, the VE testified that plaintiff could perform the job of assembler of electrical accessories, as well as other jobs, that exist in significant numbers in the national economy.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: May 31, 2016

SHERI PYM
United States Magistrate Judge